STEWART, J.
|, The defendant, Graley Roberson, was convicted of possession of 400 grams or more of cocaine, a Schedule II controlled dangerous substance, in violation of La. R.S. 40:967. He was adjudicated a second felony offender and sentenced to 15 years’ imprisonment, without benefit of probation, parole, or suspension of sentence. The defendant appeals. For the reasons discussed below, the defendant’s conviction and sentence are affirmed.
FACTS
On March 1, 2007, Agent Darin Marshall of the Caddo Parish Sheriffs Office obtained search warrants for 500 West 65th Street and 440 Gravois Drive, which are both located in Shreveport, Louisiana. The warrants were obtained pursuant to an affidavit executed by Marshall in which he detailed four controlled drug buys conducted between a confidential informant and the defendant under surveillance. These controlled drug buys took place on January 10, 2007, January 23, 2007, February 16, 2007, and March 1, 2007. In each instance, the defendant was observed departing from and/or returning to one of the aforementioned residences when traveling *915 to/from the prearranged location of the controlled drug buy.
The execution of the search warrants took place on March 1, 2007. Prior to entering the homes, the officers observed the defendant leave the residence at 500 West 65th Street, and followed him to a residence located on Woodrow Street. When he pulled into the driveway, the officers approached the defendant, who admitted that he had drugs in the trunk of a vehicle parked at his mother’s home at 508 West 65th Street. The defendant Rwas patted down and found to be in possession of two plastic baggies of suspected cocaine. The defendant was then transported to his mother’s residence in a patrol vehicle. The defendant led the officers to a vehicle located behind 508 West 65th Street and opened the trunk, whereby the officers discovered a cooler containing several bags with a substance inside which field tested positive for cocaine. The baggies weighed approximately 725 grams. Subsequent searches of 500 West 65th Street and 440 Gravois Drive yielded assorted drug paraphernalia and documents relating to suspected drug activity. Roberson was subsequently arrested.
On April 4, 2007, Roberson was charged, via bill of information, with one count of possession of 400 grams or more of cocaine, a Schedule II controlled dangerous substance, in violation of La. R.S. 40:967(F)(1)(C). On October 18, 2007, defendant filed a motion to suppress which came for hearing on November 8, 2007.
At the hearing, the state relied on the testimony of Officers Christopher Bane, C.L. Lindsay, Randy Benton, David Recc-hia, and Case Agent Darin Marshall, five of the nine officers who assisted in the execution of the warrants on March 1, 2007. Marshall, the case agent, testified that he asked Bane to make contact with the defendant while he was away from the property, since his investigation of the defendant indicated a history of gun possession, which might pose a danger during the operation. Marshall also indicated that by making contact, officers might be able to obtain keys to the residences and avoid any property damage that would result from forced entry.
IsAfter Officer Christopher Bane made contact with the defendant, Marshall arrived shortly thereafter. Marshall promptly advised him of his Miranda rights and informed him that he was a suspect in an investigation, for which Marshall had obtained search warrants. He told the defendant that he “knew” about West 65th Street and Gravois Drive. Marshall denied threatening, inducing or coercing the defendant into providing any information. Nevertheless, Marshall testified that the defendant responded to this information by stating that he did not want his mother involved and admitting that he had “fourteen ounces of bad dope and nine ounces of good dope.” The defendant then agreed to show Marshall where the drugs were located.
Marshall testified the defendant was also searched on officer safety grounds. The search was conducted by Officer C.L. Lindsay, who testified that the search was conducted because he was about to transport the defendant in his patrol unit to the 500 West 65th Street address, and he wanted to ensure the defendant did not have any weapons. When the defendant got nervous during the pat-down, Lindsay asked him if he had anything illegal or any weapons on his person. He admitted to having “dope” in the front left pocket of his overalls, where Lindsay found 31 grams of suspected cocaine and approximately $1,500.00 in currency.
Lindsay then transported the defendant, who was not handcuffed, in his police vehicle to 500 West 65th Street. Once at the *916 residence, the defendant led Marshall, Recchia and Benton to a vehicle behind the residence next door bearing the address 508 West 65th Street. The residence | ¿belonged to defendant’s mother, but Marshall testified that he was unaware of this fact at the time the search warrants were obtained, or at the time the defendant was questioned on Woodrow Street. When they arrived at the vehicle behind the residence, Marshall handed the defendant his keys, and the defendant used them to open the trunk of the vehicle. Once it was open, the defendant pointed at a cooler located in the trunk and told detectives, “That’s all I’ve got.” Inside the cooler, detectives found a coffee can and some plastic baggies containing approximately 725 grams of suspected cocaine.
Officer Randy Benton testified that he was present when the trunk of the vehicle parked behind 508 West 65th Street was opened. He stated that once the trunk was opened, the defendant pointed to an Igloo cooler and said “that’s all the narcotics I had [sic ].” Benton asserted that he subsequently searched the rest of the vehicle with the defendant’s consent and found a red and beige tackle box containing drug paraphernalia such as plastic baggies, spoons and “possibly” a scale. While Benton participated in the subsequent search of 500 West 65th Street, he testified that he did not personally locate any items of contraband during that search.
Officer David Recchia testified that he also came in contact with the defendant at 500 West 65th Street. Recchia indicated he witnessed Marshall advising the defendant of his Miranda, rights. According to Recchia, the defendant then led Marshall to the vehicle parked behind 508 West 65th Street where he provided the defendant with his keys. The defendant then used the keys to open the trunk of the vehicle and informed the officers that Rthe drugs were in an Igloo cooler in the trunk. Recchia further testified that a digital scale was found in the trunk and that a tackle box with drug paraphernalia was also recovered from the vehicle.
Recchia testified that after the search of the vehicle, the defendant was taken inside the 500 West 65th Street residence where he was again advised of his Miranda rights. Defendant proceeded to answer numerous questions posed by Recchia, admitting that he “cooked” the “crack” himself using a coffee cup and the microwave. Defendant also admitted that he would buy the raw drugs in Dallas and ship them to his residence using a female’s name as the addressee. Recchia then went next door and talked to the defendant’s mother in an effort to obtain consent to search her home, which she refused to give. Both Recchia and Benton testified that no threats or inducements were made toward the defendant in order to obtain information about the location of drugs.
The defendant’s mother, Lillian Roberson, testified that she lived at 508 West 65th Street and that the Oldsmobile Delta 88, which officers searched that day, belonged to her. She stated that at no point did she give consent for anyone to search the vehicle or her property. On cross-examination, however, she admitted that she no longer drove and that the defendant used the vehicle and had a key to it.
The defendant testified that the house on Woodrow Street where he was confronted by law enforcement belonged to Michael Mitchell, an individual performing renovation work for him on a residence where the defendant’s estranged wife was living. Because of his physical infirmities, lathe defendant had remained in the car and was in the process of calling Mitchell to get him to come out and talk to him when Bane knocked on his window and asked him to step out of the vehicle. Bane *917 then asked for the defendant’s driver’s license, which he produced. Defendant also asserted that Bane then asked him to empty his pockets and questioned him about where he was going.
Defendant testified that shortly after he had been approached by Bane, Agent Marshall arrived and told the defendant, “You can either make this easy or make this hard. I know you got a package.” Agent Marshall continued by telling the defendant that he had three search warrants, one for defendant’s house, one for his girlfriend’s house, and one for his mother’s house. According to defendant, he was told to “think about it” and was then transported to 500 West 65th Street.
When they arrived at 500 West 65th Street, defendant led the officers into his residence through the back door. Once inside, the defendant asserted that Marshall told him that “if I gave [Agent Marshall] what he wants” that he would not go “next door.” Concerned about his mother’s health and that Agent Marshall might arrest her, the defendant told Agent Marshall he would show him where “it” was in the backyard. The defendant then led the officers to the Delta 88 behind his mother’s house. The defendant claimed the car had not been used since 2001 and that he was not the only one with access to it.
After the taking of testimony, the trial court denied the motion to suppress. The defendant was subsequently tried before a jury on November |715, 2007. During the trial, the jury heard evidence basically consistent with that presented to the court by the state during the motion to suppress. Additionally, the state presented evidence that the substance found inside the cooler was cocaine weighing 605.6 grams, and that the substance found on defendant’s person was also cocaine weighing 30.1 grams.
At the conclusion of the state’s case, the defendant moved for a mistrial on the basis of references to other crimes evidence. The state argued that to the extent these were references to other crimes by the defendant, they fell under the res gestae exception. The trial court denied the motion for mistrial.
The jury returned a unanimous verdict of guilty as charged. The defendant filed a motion for new trial on November 29, 2007. That same day, the state filed a bill of information charging the defendant as a second-felony habitual offender. On April 28, 2008, the defendant pled guilty to being a second-felony offender in exchange for an agreed sentence of 15 years at hard labor, without the benefit of probation, parole or suspension of sentence, and a $250,000.00 fine.
After being sentenced, defendant appealed his conviction and sentence for possession of 400 grams or more of cocaine in State v. Roberson, No. 44,116-KA. However, because the trial court had not ruled on defendant’s timely filed motion for new trial, this Court issued a per curiam opinion vacating defendant’s sentence and remanding to the district court for further proceedings. Upon remand, the defendant withdrew his motion for new trial on September 10, 2009, and appealed again in State v. Roberson, No. 45,448-KA. This time, the record indicated that while the motion for new trial was no longer pending, the defendant had not been resen-tenced. Accordingly, defendant’s appeal was deemed premature and remanded yet again. Defendant was resentenced on April 20, 2010, to 15 years at hard labor, without the benefit of probation, parole or suspension of sentence. The present appeal followed.
LAW AND DISCUSSION

ASSIGNMENT OF ERROR NUMBER ONE BY COUNSEL AND PRO SE

The defendant asserts that the trial court erred in denying his motion to sup *918 press, specifically arguing that his initial detention was illegal since Officer Bane had no knowledge of the information which served as the basis for the search warrants obtained by Agent Marshall. Furthermore, he contends that his consent to the search of the Delta- 88 constituted an exploitation of that illegality and any evidence seized pursuant to such consent should have been suppressed.
The Fourth Amendment of the Constitution of the United States guarantees the right of the people to be secure in their person, houses, papers, and effects against unreasonable searches and seizures. This amendment is made enforceable against the states through the Fourteenth Amendment. Article I, § 5 of the Louisiana Constitution guarantees the right of the people to be secure in their person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. A warrant-less search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985); State v. Ledford, 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168.
A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); State v. Warren, 2005-2248 (La. 2/22/07), 949 So.2d 1215. A traditional exception to the warrant requirement is a search incident to a lawful arrest based upon probable cause. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). It is also well established that searches incident to arrest conducted immediately before formal arrest, are valid if probable cause to arrest existed prior to the search. Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); State v. Shennan, 2005-0779 (La.4/4/06), 931 So.2d 286, 295.
Consent to search is also one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). When the state relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. Voluntariness of consent is a question of fact which the trial judge must determine based on a totality of the circumstances. State v. Edwards, 434 So.2d 395 (La.1983); State v. Jennings, 39,543 (La.App.2d Cir.3/2/05), 895 So.2d 767, writ denied, 05-1239 (La.12/16/05), 917 So.2d 1107; State v. Paggett, 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072. If consent to search is obtained after an illegal detention or entry, the consent is valid only if it was the product of free will and not the result of exploitation of the previous illegality. State v. Owen, 453 So.2d 1202 (La.1984).
The Fourth Amendment to the U.S. Constitution prohibits only warrant-less arrests made without probable cause or in cases involving a nonconsensual entry into a residence for the purpose of a routine felony arrest. It is a well-settled constitutional principle that the police may arrest a person in a public place, even without a warrant, so long as they have probable cause to believe that the individual has committed a crime. See United States v. Watson, 423 U.S. 411, 423-24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).
*919 Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense. State v. Parker, 2006-0053 (La.6/16/06), 931 So.2d 353; State v. Ceaser, 2002-3021 (La.l0/21/03), 859 So.2d 639, 644. The determination of probable cause for an arrest does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all of the circumstances known to the officer at the time of his challenged action. State v. Kalie, 96-2650 (La 9/19/97), 699 So.2d 879, citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
Probable cause can also be demonstrated through the collective knowledge of all of the police officers involved in the investigation, even if some of the information is not communicated to the arresting or searching officers. State v. Landry, 98-0188 (La.1/20/99), 729 So.2d 1019. The searching-arresting officer can act on the basis of information of which he has no personal knowledge which has been relayed to him by police transmission facilities. United States v. Impson, 482 F.2d 197 (5th Cir.), cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973). The officer who issues the directive, however, must himself have probable cause to arrest. Weeks v. Estelle, 509 F.2d 760, 765 (5th Cir.), cert. denied, 423 U.S. 872, 96 S.Ct. 139, 46 L.Ed.2d 103 (1975).
Absent probable cause to arrest, law enforcement officers have the right to stop and question a person where there is “reasonable suspicion” to believe that the person is committing, has committed, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
A trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Whitehead, 42,-677 (La.App.2d Cir.4/2/08), 980 So.2d 243, writ denied, 2008-1096 (La.1/9/09), 998 So.2d 713; State v. Normandin, 32,927 (La.App.2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (9/29/00), 769 So.2d 550. When reviewing a motion to suppress, it is important to determine who has the burden of proof |12and the proper standard of review. Whitehead, supra. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D); State v. Johnson, 32,384 (La.App.2d Cir.9/22/99), 748 So.2d 31.
The entire record, including the testimony at trial, is reviewable for determining the correctness of a ruling on a pretrial motion to suppress. State v. Young, 39,546 (La.App.2 Cir.3/2/05), 895 So.2d 753; Whitehead, supra. Great weight is placed upon the trial court’s determination, because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App.2 Cir.5/8/96), 674 So.2d 1082, citing State v. Jackson, 26,138 (La.App.2 Cir.8/17/94), 641 So.2d 1081. Accordingly, this court will review the district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a de novo review to its findings of law. State v. Hemphill, 41,526 (La.App.2 Cir.11/17/06), 942 So.2d 1263, *920 citing State ex rel Thibodeaux v. State, 2001-2510 (La.3/8/02), 811 So.2d 875.
In the instant case, the defendant argues that his consent to the search of the vehicle behind his mother’s house was tainted by his initial detention by Officer Bane. He believes that this detention warrants suppression of the cocaine seized pursuant to that search. The trial court noted that the existence of probable cause to make a warrantless arrest of the defendant renders any analysis of the propriety of the stop under the dictates of Terry unnecessary.
By his own admission Bane observed no traffic violations, and by defendant’s own admission, he was not stopped for one. Rather the defendant was approached by Bane when he pulled into a private driveway. Bane asked him for his driver’s license which defendant produced. Their encounter lasted no more than a minute before Marshall arrived and asked the defendant to step out of his vehicle whereupon he read the defendant’s Miranda rights.
Marshall’s information, unchallenged by the defendant either at the motion to suppress or in brief, included four different controlled “drug buys” between the defendant and a confidential informant, the last of which had taken place the very same day the defendant was approached by Officer Bane. The last buy was arranged pursuant to a call monitored by Agent Marshall and took place under his surveillance. These facts formed the basis to justify a man of ordinary caution believing that defendant had committed a felony offense.
The fact that Bane was unaware of the information upon which Marshall had obtained the search warrants, and therefore whether probable cause existed for the defendant’s arrest, is irrelevant. Marshall had directed Bane to detain the defendant. Even though Bane did not have personal knowledge of the facts establishing probable cause, he was carrying out the directions of Marshall, who did have probable cause to arrest the defendant. Pursuant to the “collective knowledge” doctrine, the fact that Bane was 114unaware of the information upon which Marshall obtained the search warrant, and therefore whether probable cause existed for the defendant’s arrest is not relevant.
The warrantless search of the defendant’s person was valid as a search incident to a lawful arrest, based on probable cause. Furthermore, the warrantless search of the vehicle behind the defendant’s mother’s house was also valid as having been conducted pursuant to lawfully obtained consent which, as noted above, was not the product of an illegal detention or entry.
These assignments of error are therefore without merit.

ASSIGNMENT OF ERROR NUMBER TWO BY COUNSEL AND PRO SE

In these assignments, the defendant argues that the trial court erred in denying the motion for a mistrial due to repeated direct references to inadmissible other crimes evidence. More specifically, he asserts that the State repeatedly proffered evidence that he was also a dealer of cocaine.
Except as otherwise provided in La. C.E. Art. 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal *921 case shall provide reasonable notice in advance of trial, of the nature of any evidence it intends to introduce at trial for such purposes, or when it relates 115to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. 404(B)(1).
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” State v. Richardson, 46,360 (La.App.2 Cir.6/22/11), 71 So.3d 492. This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126 (La.1973). Evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that forms an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Colornb, 98-2813 (La.10/1/99), 747 So.2d 1074; State v. Coates, 27,287 (La.App.2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365.
References to the res gestae of a crime during opening statements are neither improper nor prohibited. State v. Jackson, 450 So.2d 1053 (La.App. 1st Cir.1984), writ denied, 494 So.2d 321 (La.1986). The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case. La. C. Cr. P. art. 767.
The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Gatti, 39,833 (La.App.2d Cir. 10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511.
11fiThe law regarding mistrials on the grounds of improper references to other crimes is well settled. La. C.E. art. 404(B) provides that evidence of other crimes, acts or wrongs is generally not admissible. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Ellis, 42,520 (La.App.2d Cir.09/26/07), 966 So.2d 139. For purposes of article 770, a law enforcement officer is not considered a “court official,” and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770. State v. Ellis, supra; State v. Scott, 34,949 (La.App.2d Cir.01/25/02), 823 So.2d 960, writ denied, 02-1622 (La.05/16/03), 843 So.2d 1122.
La. C. Cr. P. art. 771 sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require automatic mistrial under article 770. La. C. Cr. P. art. 775 also sets forth additional permissive grounds for mistrial. Under these articles, mistrial is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the- defendant to obtain a fair trial. State v. Ellis, supra. Moreover, mistrial is a drastic remedy which is authorized only where substantial prejudice will otherwise result to the accused. State v. Kemp, 39,358 (La.App.2d Cir. 03/l 1/05), 17 896 So.2d 349, writ denied, 05-0937 *922 (La.12/09/05), 916 So.2d 1052. A trial court’s ruling denying mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518 (La.01/17/01), 776 So.2d 443, appeal after remand, 04-0765 (La.App.4th Cir.10/27/04), 888 So.2d 329, writ denied, 04-2919 (La.03/18/05), 896 So.2d 1003, cert. denied, 546 U.S. 867, 126 S.Ct. 154, 163 L.Ed.2d 154 (2005); State v. Taylor, 30,310 (La.App.2d Cir.02/25/98), 709 So.2d 883.
Even if a mistrial was warranted under article 770, 771, or 775, the failure to grant a mistrial would not result in an automatic reversal of defendant’s conviction, but'would be a trial error subject to the harmless error analysis on appeal. State v. Givens, supra; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Trial error is harmless where the verdict rendered is “surely unattributable to the error.” State v. Johnson, supra.
A comment must not “arguably” point to a prior crime; to trigger a mandatory mistrial pursuant to Article 770(2), the remark must “unmistakably” point to evidence of another crime. State v. Edwards, 97-1797 (La.7/29/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). Furthermore, under La. C. Cr. P. art. 770, a defendant must object and move for a mistrial after his objection to the prosecutor’s statements. The absence of a timely motion for mistrial under La. C. Cr. P. art. 770 constitutes a waiver of the defect. State v. Shaw, 37,168 (La.App.2d Cir.6/25/03), 850 So.2d 868. See also State v. Gatch, 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676, writ denied, 96-0810 (La.9/20/96), 679 So.2d 429.
|1sWe find that the defendant’s assignment of error lacks merit for several reasons. First, only one of the references was made by a court official. The prosecutor stated that the defendant had confessed to one of the case agents that he cooked the cocaine in order to make crack for distribution in Caddo Parish. While this is arguably an impermissible reference to an inculpatory statement made by the defendant after his arrest, the error was harmless. The defendant was convicted of possession of more than 400 grams of cocaine. The evidence supporting the conviction was abundant, including the fact that the defendant led investigators to a vehicle, produced the keys to it, and opened its trunk to reveal an Igloo cooler containing more than 600 grams of cocaine. Under these facts, we are certain that defendant’s conviction is not attributable to the state’s arguably impermissible reference to other crimes evidence during opening remarks.
The remainder of the statements were made by witnesses and thus, would not constitute grounds for a mistrial under La. C. Cr. P. art. 770. Nor would the references made warrant a mistrial under the permissive grounds of La. C. Cr. P. art. 771. The comments made by the witnesses did not “unmistakably” point to evidence of another crime.
Sheriffs Deputy Whitehorn explained the discovery of drug paraphernalia among the defendant’s possessions:
STATE: If someone wanted to take a large quantity of cocaine and break it down into smaller quantities of cocaine, would these small baggies ... have you found cocaine to be associated with small baggies such as this?
WHITEHORN: Yes. Usually what they would do if they have a large amount of drugs they would take smaller baggies and |1flbreak them down and put them in individual ones for retail to sell to other people.
Whitehorn’s explanation, that the baggies discovered are typically used in the distri- *923 button of CDS, was no more a reference to the fact that defendant might have been engaged in distribution than the fact that he might have been a frequent purchaser. Since the baggies were discovered in the course of the investigation regarding his possession of the more than 400 grams of cocaine, they formed part of the res gestae.
When Officer Recchia was asked how he came into contact with the defendant, he responded that he was working a narcotics case headed by Agent Marshall which “involved the distribution of cocaine”:
BY THE STATE: How did you come into contact with the defendant?
RECCHIA: We were working a narcotics case involving Mr. Roberson. Case agent assigned to that case was Marshall, Darren Marshall, Caddo Deputy assigned to our task force, involved in the distribution of cocaine.
While this unsolicited comment “arguably” points to the fact that defendant was the one doing the distributing, it does not “unmistakably” point to evidence of distribution by the defendant. State v. Edwards, supra. Nor did Officer Recchia’s explanation of a “cookie,” given at defense counsel’s request, make it impossible for the defendant to receive a fair trial. While Officer Recchia indicated that the cookie could be sold as a whole or could be broken down, he never stated that the defendant had in fact been making any such “cookies.”
|,nWe also note that the defendant’s motion for a mistrial was untimely. He did not make his motion until after the state rested its case, when in fact he should have made the motion at the time of the objections.
Due to the overwhelming evidence against the defendant, we find that any error regarding the “other crimes” evidence was properly cured by the trial court’s admonishments to the jury after the objections were made, and that any such error was harmless. These assignments are therefore without merit.

ASSIGNMENT OF ERROR NUMBER THREE BY COUNSEL AND PRO SE

In these assignments, the defendant assigns as error all errors patent.
La.C.Cr.P. art. 920 states:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignments of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
In accordance with this article, the record was reviewed for errors patent and none were found. Accordingly, these assignments of error are without merit.
CONCLUSION
For the foregoing reasons, it is respectfully recommended that the defendant’s conviction and sentence be affirmed.
AFFIRMED.