Judgment rendered November 8, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,510-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

Versus

CARLOS M. SMITH                       Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 354,236

Honorable John D. Mosely, Jr., Judge

* * * * *

CARLOS M. SMITH                       Pro Se, Appellant


JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
TRENEISHA JACKSON HILL
SENAE DENEAL HALL
Assistant District Attorneys

* * * * *


Before STONE, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.**

This criminal appeal arises out of the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable John Mosely, Judge, presiding. A unanimous jury convicted the defendant, Carlos M. Smith, of two counts of attempted second degree murder. He was sentenced to 75 years at hard labor without benefits on each count, with the sentences to run consecutively. Smith early on in the process opted (and was allowed by the trial court) to proceed to trial *pro se* and without the assistance of standby counsel. The instant appeal has been pursued by a *pro se* Smith, who declined the assistance of an appellate project attorney on appeal.

### FACTS/PROCEDURAL HISTORY

The State of Louisiana filed a bill of information against the defendant, Carlos M. Smith ("Smith"), on January 9, 2018, charging him with two counts of attempted second degree murder, violations of La. R.S. 14:27 and 14:30.1, in connection with the shootings of Richard Howard and George Robinson that occurred on or about December 6, 2017, in Shreveport, Louisiana. Smith was also charged with one count of possession of a firearm or carrying of a concealed weapon by a convicted felon, a violation of La. R.S. 14:95.1, on the same date.

On January 9, 2018, the trial court found probable cause for the charges against Smith following a preliminary examination. On that same date, Smith filed a motion to represent himself and the trial court, after a brief colloquy, including an offer to appoint standby counsel (which Smith refused), granted Smith's request. Smith waived arraignment and pled not guilty.

On December 16, 2020, the State filed an amended bill of information dropping the third count (the possession of a weapon by a convicted felon charge) and, after his arraignment on the amended bill, Smith pled not guilty on January 4, 2021.

Jury selection began on April 5, 2021, and a jury was empaneled on April 7, 2021. Trial began on April 13, 2021. The following is a brief summary of the facts.

All of the people involved in this incident grew up together in a small section of Cedar Grove known as Pine Valley. On the evening of the shooting, George "Bug" Robinson had just gotten off work and had walked to his home at 7232 Bethany Drive in Shreveport, Louisiana. George and his wife Zandier lived next door to his parents, whose home was located at 7236 Bethany Drive.

Richard Howard testified that he and George had plans to "bring in the holidays" that night. Richard was homeless at the time and sometimes stayed with George's father, but noted he was not doing so at the time of the shootings. On the night of December 5, Richard and George were outside when Smith walked up. According to Richard, Smith asked George to borrow some money. George went to his dad's house to get some. Richard testified he was standing between George's house and George's father's truck. The only people outside at the time were Richard and Smith. Richard saw Smith walk up behind him. From that point "whoever" shot him eased from behind him, hit him on the head, then shot him.

On cross-examination, Smith spent an inordinate amount of time asking Richard about the community's perception of Smith as a criminal and what Richard had told the investigating officer about Smith. He also asked

Richard about an alleged incident in which Smith assaulted one or both of Richard's nieces. On redirect, the prosecutor asked Richard whether he knew that Smith had a conviction for domestic abuse battery. Smith objected, and the trial court sustained his objection.

George testified that he had borrowed money from Carlos Smith a few days previously to buy some "mojo," and he had told Smith to come by his house on payday so he could pay him back. George went to his father's house next door to see if he had any change. As he was walking, George saw Richard Howard and Smith standing by George's father's black truck—Smith was out there waiting for him.

George went out to tell Smith he couldn't get any change. Smith thought he was playing. George gave Richard some crack, then walked back across his yard and stood by the edge of the street. He saw Richard and Smith talking. George testified that he then saw Smith shoot Richard in the head.

Zandier Robinson testified that she had been outside trying to get her husband George back inside the house so he wouldn't blow all of their bill money that night. Before she could get the door closed, she saw Smith walk up behind Richard and shoot him in the head. Zandier was able to describe Smith's clothing from that evening as a black trench coat and black hat. She was emotional during her testimony and related that she has been in counseling since the shootings. Also, she noted that she has relocated following the traumatic events of that night. George and Smith started walking down the street. George related that he was nervous. A man joined them and as he and George were talking, George heard a shot. As he turned around, Smith was "all over [him]." George took off running with Smith

chasing him, "steadily shooting." Eventually, George fell and played dead. Smith's gun was a small black revolver, like a six-shot .32 or .38.

George testified that he went to a neighbor's house and got him to call 911, then lay on the ground in his carport until EMTs and police showed up. When he was able to answer questions, he told police that Carlos Smith had shot him. George stated that he also told officers that Smith had shot Richard Howard.[1]

Smith took the stand in his own defense. He related to the jury his theory of the case that he was the victim of a conspiracy, an easy scapegoat because he supposedly had his grandmother identify one of "their" friends as a suspect in a crime, which allegedly caused him to be labelled a snitch in "their" neighborhood. Smith also related that he was the victim of several previous crimes which he contended the police did not take seriously or properly investigate that were related to the shootings of December 6, 2017.

A 12-person jury returned unanimous guilty verdicts on the two counts of attempted second degree murder. Smith filed motions for post-verdict judgment of acquittal and new trial, both of which were denied by the trial court.

On May 12, 2021, the State filed a multiple offender bill charging Smith as a second felony offender. In the bill, Smith's first felony offense was alleged to be an aggravated battery charge that he pled guilty to on November 9, 2005, and was sentenced to a six-year hard labor sentence. The habitual offender bill alleged that the second felony offense is that

---

[1] Smith was confrontational with both Zandier and George, proposing that they had concocted a story of him as the shooter to cover for the fact that George was actually the perpetrator.

which Smith was convicted of on April 13, 2021.[2] Smith continued to represent himself, and, based upon his prior representation, the trial court allowed him to do so.

Smith entered a plea of not guilty to the multiple offender bill. On May 25, 2021, the trial court held a hearing on Smith's motions for post-verdict judgment of acquittal and new trial; both motions were denied the day of the hearing. At that time, Smith filed a motion to quash the habitual offender bill. A hearing on the multiple offender bill was held on June 3, 2021. After the hearing, the trial court denied Smith's motion to quash the multi bill and adjudicated him a second felony offender.

Smith was sentenced on June 16, 2021. Consecutive sentences of 75 years at hard labor without benefits were imposed on each count. Smith filed a motion seeking reconsideration of the multiple offender adjudication and sentencing on July 18, 2021. This motion was denied by the trial court. Smith filed the instant appeal, as well as a plethora of motions once his appeal was lodged.

## DEFENDANT'S ARGUMENT

Defendant has filed no appellate brief. Instead, Smith has filed a "Writ of Deceit," with several supplemental filings in support (all of which total approximately 300 pages). Smith refused to file a brief because he claims that the record lodged by the trial court on December 9, 2021, is "adulterated" and "interpolated" to make it appear that he fumbled his own jury trial. Specifically, that "interpolaters" compromised his questions and arguments, which were "majorly prewritten and eloquently designed," by

---

[2] Smith was convicted of the instant two offenses, attempted second degree murder, on April 13, 2021.

5

"rearranging and additioning as well as extracting particular statements and objections" in favor of the State. Smith claims fraud on the part of one of the court reporters, the trial judge, and the assistant D.A.

Among the relief sought by Smith in his Writ of Deceit: judicial notice of the contents of his motions for mistrial, post-verdict judgment of acquittal, and new trial; the granting of his Writ of Deceit and a concomitant stay of his conviction and sentence with a release on his own recognizance until his exoneration or new trial which is warranted under "Estoppel by Record."

After receiving the State's brief urging this Court to perform only a review of the record for errors patent, Smith was motivated to file a supplement to his Writ of Deceit. Therein, he contends that the appellate record is "an infection to the truth" that, as constituted, deprives him of his right to a complete record. According to Smith, the false demonstration (the appellate record) impedes him from correctly filing his brief because the record as lodged contains too much incorrect information— "only brand new transcripts will cure the infections deliberately spread throughout the Record lodged 12-09-2023."[3]

Smith, however, has argued in his Writ of Deceit that the trial court erred in failing to grant a mistrial after the State questioned a witness about an alleged conviction of the defendant's. Smith points out that he promptly

---

[3] Smith has argued that his appeal has been pending for a long time, but he blames it on the "infected record." He is correct about his appeal being here a long time before it was docketed. However, the problem was NOT an "infected" record, it was that the trial court needed to hold a proper *Faretta* hearing to determine Smith's ability to continue his self-representation on appeal. A second issue was Smith's refusal to comply with procedural rules governing appeals.

objected.[4]  Smith also notes that he filed a motion for mistrial which he claims should have been granted.[5]

Smith has also filed a plethora of additional motions in this Court, to wit:  Motion to Proceed *In Forma Pauperis* on Appeal; *Pro Se* Application for Expedited Consideration; Motion to stay Proceedings; Motion to Remand Briefing Order; Motion to Reconsider the Priority of Appellant's Motion to Proceed *In Forma Pauperis*; Motion to Complete the Record; Motion to Receive a Copy of the Completed Record; Supplement to Motion to Alter or Amend (the Trial Court Record); "Death Knell Exception"; Motion to Objection to the Record Lodged on 12-9-21; Rehearing (to re-urge objections and issues previously filed before the Court in various motions); Motion for New Trial; Motion to Strike the Transcripts of Record Lodged 12-9-21; and, Motion to Declare State Impediment.

## THE STATE'S ARGUMENT

In its brief, the State urges this Court to limit its review to one for errors patent.

In its brief the State pointed to a few instances of potential errors patent:

> (1) "Error, if any" in the trial court's advising Smith of his rights regarding the habitual offender proceedings; and
> (2) The trial court's failure to use the multiple offender law in effect at the time of Smith's offense in sentencing him.

---

[4] Smith is correct on this point.  Smith in fact did make an actual objection which was sustained by the trial court based upon his argument.  The trial court record, however, correctly reflects his objection.

[5] Smith made several motions for mistrial, all based on the prosecutor's improper reference to an alleged domestic abuse battery conviction.  The trial court allowed Smith and the prosecutor to argue all of them.

The State contends that neither of these is error patent, but if either is found to be so, it is harmless error. Thereafter, in response to an order issued by the panel, the State filed a brief addressing the trial court's handling of the prosecutor's improper reference to an alleged conviction of Smith's during another witness's testimony. According to the State, any error by the ADA, which occurred on redirect examination of the witness, or in the trial court's handling of said error, is harmless in light of the record.

**DISCUSSION**

Because Smith is a *pro se* defendant, [6] we have broadly construed his filings and although he failed to submit a brief *per se*, this Court has read his Motion in Deceit for any potential appellate arguments therein. We have not, however, thrown applicable substantive and procedural law out the window. Smith was not coerced into self-representation. In fact, the trial judge, on more than one occasion, offered him the assistance of standby counsel, which Smith consistently refused. Be that as it may, in *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the U.S. Supreme Court noted that, although a defendant has a right to counsel at trial, counsel cannot be forced on a defendant if he or she waives that right:

> It is undeniable that in most criminal prosecutions, defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him[.] The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular

---

[6] This Court remanded the matter twice for the trial court to conduct a *Faretta* hearing for the determination of Smith's ability to continue representing himself on appeal. At the last hearing, after expressing his desire to continue to act as his own attorney, Smith declined the appointment of an attorney from the Louisiana Appellate Project.

case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Illinois v. Allen*, 397 U.S. 337, 350-351, 90 S. Ct. 1057, 1064, 25 L. Ed. 2d 353 (Brennan, J., concurring). (footnote omitted).

*Faretta*, 422 U.S. at 834, 95 S. Ct. at 2540-2541; *State v. Palmer*, 06-1375, p. 3 (La. App. 4 Cir. 7/18/07), 963 So. 2d 466, 468.

*Trial Transcripts/Record*

We will first address Smith's arguments regarding the record. In Louisiana, a defendant convicted of a crime triable by a jury has a constitutional right of appeal as to questions of law. La. Const. art. V, § 10; La. C. Cr. P. art. 912.1; *State v. Small*, 13-1334, p. 17 (La. App. 4 Cir. 8/27/14), 147 So. 3d 1274, 1285, *writ denied*, 14-1930 (La. 4/24/15), 169 So. 3d 354. To assure that appeals are properly and thoroughly considered, the Louisiana Constitution provides a complementary constitutional right which guarantees "judicial review based upon a complete record of all evidence upon which the judgment is based." La. Const. art. I, § 19; *State v. Small*, *supra*. The scope of what constitutes a "complete record" under Article I, Section 19 encompasses "all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel," La. C. Cr. P. art. 843, as well as "exact copies of all documentary evidence and other evidence … in the order in which such evidence was filed." Uniform Rules, Courts of Appeal, Rule 2-1.7. La. C. Cr. P. art. 843 further provides that in felony cases, it is the clerk or court stenographer who shall record all

9

of the proceedings. The trial judge is duty-bound to see that the court reporter makes a true, complete, and accurate record of the trial. *State v. Landry*, 97-0499, p. 3 (La. 6/29/99), 751 So. 2d 214, 216; *State v. Small*, *supra*. *See also*, La. R.S. 13:961(C)(1).

It is essential in an adversarial legal system that a dependable record be provided so that errors by the trial court may be reviewed, assigned, and supported by appellate counsel. *State v. Small*, 13-1334, p. 18, 147 So. 3d at 1286; *see*, *Hardy v. United States*, 375 U.S. 277, 280 n. 3, 84 S. Ct. 424, 427, 11 L. Ed. 2d 331 (1964); *State v. Robinson*, 387 So. 2d 1143, 1144 (La. 1980). Additionally, a complete review ensures that the appellate court may review the transcripts for any errors committed during trial. *Id.* *See also*, *State v. Walker,* 02-1350, p. 12 (La. App. 4 Cir. 4/9/03), 844 So. 2d 1060, 1067, *writ denied*, 03-1335 (La. 12/19/03), 861 So. 2d 553. La. C. Cr. P. art. 920 sets forth the scope of our appellate review, which is restricted to the consideration of errors on appeal to those "designated in the assignment of errors," and those "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." *State v. Small*, *supra*.

In the instant case, as he did in the trial court, Smith refused the assistance of counsel, and has made the focus of his pleadings in this Court alleged discrepancies in and omissions from the trial court record. Not every omission from a record on appeal constitutes a violation of constitutional rights warranting reversal of a conviction and the ordering of a new trial. *Id.*; *State v. Walker*, 02-1350, p. 11, 844 So. 2d at 1066. Sometimes, an incomplete record may be adequate for full appellate review. *State v. Hawkins*, 96-0766, p. 8 (La. 1/14/97), 688 So. 2d 473, 480; *State v. Small*,

*supra*; *State v. Bright*, 00-1255, p. 7 (La. App. 4 Cir. 2/6/02), 809 So. 2d 1112, 1116-17, *writ denied*, 02-0698 (La. 11/1/02), 828 So. 2d 563.

Even though reversible error has been found when material portions of the record are unavailable, incomplete, or erroneous, a "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. *State v. Draughn*, 05-1825, p. 63 (La. 1/17/07), 950 So. 2d 583, 625, *cert. denied*, 522 U.S. 1012, 128 S. Ct. 537, 169 L. Ed. 2d 377 (2007); *State v. Allen*, 95-1754 (La. 9/5/96), 682 So. 2d 713, 722; *State v. Ford*, 338 So. 2d 107, 110 (La. 1976). An incomplete record may be adequate for appellate review. *State v. Campbell*, 06-0286, p. 99 (La. 5/21/08), 983 So. 2d 810, 873, *cert. denied*, 555 U.S. 1040, 129 S. Ct. 607, 172 L. Ed. 2d 471 (2008); *State v. Castleberry*, 98-1388, p. 29 (La. 4/13/99), 758 So. 2d 749, 773, *cert. denied*, 528 U.S. 893, 120 S. Ct. 220, 145 L. Ed. 2d 185 (1994); *State v. Hawkins*, 96-0766, p 8 (La. 1/14/97), 688 So. 2d 473, 480. A defendant will not be entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record. *Id.* With regard to missing transcripts or pretrial proceedings, where minute entries show relatively minor events, or where there are "gaps" in the record, such inconsequential omissions merit no relief. *State v. Campbell*, 06-0286, p. 101, 983 So. 2d at 873; *State v. LaCaze*, 99-0584, p. 17 (La. 1/25/02), 824 So. 2d 1063, 1076-77, *cert. denied*, 537 U.S. 865, 123 S. Ct. 263, 154 L. Ed. 2d 110 (2002).

Smith has made a plethora of claims about the record, none of which he has supported by anything but baseless rhetoric and argument. They include claims such as: (1) every volume of his jury trial transcripts was

11

doctored and forged; (2) some of his objections or arguments were "rearranged" or rephrased as something they weren't originally; (3) some of the testimony of the witnesses was changed; (4) the audio recording is needed because the transcripts are too perfect with guilty words he did not speak; (5) the court reporters changed while the State was still producing its witnesses; (6) the transcripts were minimized and rearranged to wrongly reflect which witnesses he needed (and didn't need) for his defense case; (7) the improper comment made by ADA Hill was actually not made during the redirect testimony of witness Richard Howard, but was made while Smith was speaking.[7]  Unsupported speculations such as those raised by Smith cannot stand as the basis for relief.  Nothing in the record supports Smith's complaints of missing, altered, or rearranged testimony, objections or argument.

***Motion for Mistrial***

La. C. Cr. P. art. 775 provides that, upon motion of a defendant, a mistrial shall be ordered, and in a jury trial the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or where authorized by Article 770 or 771. La. C. Cr. P. art. 770(2) provides that, upon motion of a defendant, *a mistrial shall be ordered* when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.

---

[7] Smith actually admits in the record that the comment (it was a question) came during Richard Howard's testimony.  R. p. 1910.

Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." *State v. Roberson*, 46,697 (La. App. 2 Cir. 12/14/11), 81 So. 3d 911, *writ denied*, 12-0086 (La. 4/20/12), 85 So. 3d 1270; *State v. Richardson*, 46,360 (La. App. 2 Cir. 6/22/11), 71 So. 3d 492, *writ denied*, 11-1777 (La. 4/27/12), 86 So. 3d 615. This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. *State v. Prieur*, 277 So. 2d 126 (La. 1973); *State v. Roberson*, 46,697, p. 15, 81 So. 3d at 921.

Even if a mistrial was warranted, such as where other crimes evidence is erroneously admitted, the failure to grant a mistrial would not result in an automatic reversal of the defendant's conviction but would be a trial error subject to a harmless error analysis. *State v. Ruiz*, 06-1755, p. 7 (La. 4/11/07), 955 So. 2d 81, 86; *State v. Givens*, 99-3518 (La. 1/17/01), 776 So. 2d 443; *State v. Johnson*, 94-1379, p. 17 (La. 11/27/95), 664 So. 2d 94, 102; *State v. Lewis*, 51,672, p. 13 (La. App. 2 Cir. 11/15/17), 245 So. 3d 233, 244. Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt. *State v. Ruiz*, *supra*; *State v. Maise*, 00-1158, p. 8 n. 5 (La. 1/15/02), 805 So. 2d 1141, 1148, n. 5, *citing Arizona v. Fulminante*, 499 U.S. 279, 307-11, 111 S. Ct. 1246, 1264-65, 113 L. Ed. 2d 302 (1991).

An error is harmless when the guilty verdict was surely unattributable to the verdict. *State v. Robertson*, 06-1537 (La. 1/16/08), 988 So. 2d 166. Factors to be considered include the importance of the evidence to the state's

case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the state's case. *State v. Walker*, 55,255, pp. 24-25 (La. App. 2 Cir. 8/9/23), 369 So. 3d 488, 501; *State v. Dillard*, 45,633, p. 13 (La. App. 2 Cir. 11/3/10), 55 So. 3d 56, 64, *writ denied*, 10-2853 (La. 11/18/11), 75 So. 3d 454.

As noted above, during the redirect of victim Richard Howard, the prosecutor improperly asked Richard whether he was aware that Carlos Smith had a conviction for domestic abuse battery dated December 14, 2015.[8] The following is excerpted from the record:

| | |
|---|---|
| Smith: | That's an objection, Your Honor. |
| Richard: | I done heard about it. |
| Smith: | And that— |
| Richard: | I done— |
| Smith: | Because—that's an objection, Your Honor. And that is an absolute lie. |
| Prosecutor: | If I may, Your Honor, not only is that a part of his conviction, we have—we show that it's a part of his criminal history. But he opened the door when he asked this witness whether or not he abused his niece, whether or not he saw him abuse his niece. |
| Smith: | Your Honor, again, the door did not open on that there, at all. And this is an absolute lie. And then, matter of fact, come with your proof. |

   \*   \*   \*

| | |
|---|---|
| The Court: | All right. So I'll sustain the objection— |
| Prosecutor: | Your Honor— |
| The Court: | --based on the argument. |

Smith, however, did not contemporaneously move for or file a written motion for mistrial. Instead, he waited until the end of the next day's testimony to file a written motion for mistrial, which was vigorously defended by the State's attorney as untimely. The trial judge denied Smith's

---

[8] In fact, there is no such conviction on that date, for domestic battery or any other offense.

14

motion but offered to admonish the jury, which Smith apparently did not object to, and on the following day, the following instruction was given to the jury:

> The Court:  [L]et me first admonish you, during the testimony of Mr. Richard Howard the State made reference to the defendant having a conviction for domestic abuse battery.  I'm going to admonish you to totally disregard that.

Smith, however, later objected to the admonition and filed additional motions for mistrial, all of which were denied by the trial court.

It was during the redirect examination of the State's first witness, Richard Howard, that the objectionable question was asked by the prosecutor, after extensive questioning of the witness on cross-examination by Smith about his own character in the community.  We agree with the State that Smith certainly opened the door to the issue of his character in the community with extensive questions to Richard as to his reputation among their neighbors and even the witness himself, with Smith's questions about an incident involving him and Richard's nieces, but disagree vehemently that the door was opened so wide as to withstand a question about a non-existent conviction, particularly in light of the fact that the misinformation presented to the jury through the question was not clarified by the trial court but was left to stand, although an admonishment to disregard the question was given to the jury.

At the time the objectionable comment was made, the jury should have been excused, and the prosecutor should have been taken to task for her violation of La. C. Cr. P. art. 770(2).  Smith should have been given the option for an admonishment *at that time* instead of after his untimely motion for mistrial was made, some six witnesses later.  Had Smith opted for

15

standby counsel, he would have been advised to move for a mistrial at the time he made his objection. However, Smith chose self-representation, despite the trial court's efforts to provide him with the assistance of an attorney for just such a procedural predicament. In this situation, Smith either deliberately decided not to contemporaneously move for mistrial, or he realized his mistake after the fact and filed the motion the following day. Nonetheless, while Smith's timely objection preserved the issue for review, given the overwhelming testimony as to Smith's guilt, including the testimony of three eyewitnesses, application of the harmless error rule mandates that this Court find that any error regarding the State's reference to inadmissible other crimes evidence and the trial court's handling of said error is harmless.

### *Error Patent Review*

La. C. Cr. P. art. 920 provides that the scope of appellate review extends to assigned errors and errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. Absent any assigned error, review is limited to error patent. The record, for purposes of error patent review, includes the caption, the time and place of the holding of the court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the verdict, and the judgment or sentence. *State v. Oliveaux*, 312 So. 2d 337 (La. 1975); *State v. Reed*, 46,147 (La. App. 2 Cir. 3/2/11), 58 So. 3d 1006.

We have examined the record for errors patent and the only potential ones we found related to the multiple offender hearing. A multiple offender

16

proceeding is "merely part of sentencing." *State v. Vaughn*, 22-00214, p. 5 (La. 5/5/23), 362 So. 3d 363, 366; *State v. Langendorfer*, 389 So. 2d 1271, 1276-77 (La. 1980). A defendant is adjudicated a habitual offender as a result of prior felony convictions. The sentence to be imposed following a habitual offender adjudication is simply an enhanced penalty for the underlying conviction. *State v. Vaughn*, *supra*; *State v. Parker*, 03-0924, p. 15 (La. 4/14/04), 871 So. 2d 317, 326.

It is well settled that the law in effect at the time of the offense is determinative of a defendant's punishment, including for habitual offender proceedings. *State v. Lyles*, 19-00203, p. 3 (La. 10/22/19), 286 So. 3d 407, 409; *State v. Parker*, 03-0924, p. 16, 871 So. 2d at 326.

For the defendant to receive an enhanced penalty under La. R.S. 15:529.1, the State must prove prior felony convictions and then prove the defendant is the same person who committed the prior felonies. *State v. Brown*, 11-1656 (La. 2/10/12), 82 So. 3d 1232; *State v. Blackwell*, 377 So. 2d 110 (La. 1979). Both the identity and the prior conviction(s) must be proven beyond a reasonable doubt. La. R.S. 15:529.1(D)(1)(b); *State v. Brown*, *supra*.

Failure to advise a defendant of his constitutional rights to remain silent, to a formal hearing, and to have the State prove that he is a multiple offender during a habitual offender proceeding is error patent, but may be considered harmless error. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486; *State v. Lynn*, 52,125 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1262*, writ denied*, 18-1529 (La. 4/15/19), 267 So. 3d 1129; *State v. Goosby*, 47,772 (La. App. 2 Cir. 3/6/13), 111 So. 3d 494, *writ denied*, 13-0760 (La. App. 2 Cir. 11/1/13), 125 So. 3d 418; *State v. Delaney*, 42,990 (La. App. 2

Cir. 2/13/08), 975 So. 2d 789; *State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077.

The failure to advise of these rights is not considered reversible error where the defendant's habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant. *State v. Taylor*, 53,934, p. 18, 321 So. 3d at 496.

The State filed a bill charging Smith as a second felony offender on May 12, 2021. Therein, Smith's first felony offense was alleged to be aggravated battery, to which he pled guilty on November 9, 2005, and his second felony was alleged to be the instant attempted second degree murder conviction(s). The court minutes from May 12, 2021, show that Smith, present without counsel, waived arraignment and pled not guilty to the habitual offender bill of information. They do not, however, indicate that the trial court advised Smith of his rights as required by La. R.S. 15:529.1. The trial court set a hearing date for May 25, 2021, for Smith's pending motions.

On May 25, 2021, the trial court heard and considered Smith's motions for new trial and post-verdict judgment of acquittal, both of which were denied. On that same date, Smith filed a motion to quash the habitual offender bill. A hearing was held on June 3, 2021, on the motion to quash and on the multiple offender bill itself. The motion to quash was denied. At the hearing, the State presented the testimony of two witnesses. The first was Probation and Parole Officer Christopher Heun, who testified that he was familiar with Smith, having supervised him from May 2017 to January 2018 on a charge of possession of a weapon by a convicted felon. Ofc. Heun testified that he was familiar with Smith's criminal history, including

18

his prior aggravated battery conviction and the fact that he had been on parole supervision for that offense from April 9, 2010, until September 9, 2010. Therefore, the State proved the discharge date on Smith's prior aggravated battery conviction and that it was within ten years of the date of the instant offenses of attempted second degree murder (December 6, 2017) for purposes of his second felony offender adjudication.[9] The State also presented certified copies of the bill of information, minutes, and Smith's fingerprints from his aggravated battery conviction. The second witness, Lieutenant Gary Baird of the Caddo Sheriff's Office, was qualified as a fingerprint comparison expert. Lt. Baird stated that Smith's prints taken in court that day matched the prints from the bill in Docket No. 238202 from Smith's aggravated battery conviction. While the record does not show that the trial court informed Smith of his rights prior to the habitual offender hearing, such failure does not constitute reversible error, since the State clearly established Smith's habitual offender status by competent evidence at the hearing through the testimony of Ofc. Heun and Lt. Baird. *See*, *State v. Taylor*, *supra*.

Smith was sentenced on June 16, 2021. The State noted that the applicable sentencing range under La. R.S. 15:529.1(A)(1) was 16 to 100 years, with that being one-third of the longest term for attempted second

---

[9] La. R.S. 15:529.1(C), in effect in 2017, provided a ten-year cleansing period between the date of commission of the current offense (the attempted second degree murder offenses) and expiration of the maximum sentence or sentences of the previous conviction (aggravated battery), or between the expiration of the maximum sentences of each preceding conviction alleged in the bill and the date of commission of the following offenses. Additionally, "any period of parole, probation, or incarceration … shall not be included in the computation of any said ten-year periods [.]" The date Smith completed parole supervision for his aggravated battery conviction was September 9, 2010, which is within ten years of the date of the attempted second degree murder offenses that occurred on December 6, 2017.

degree murder[10] and not more than twice the longest term. However, both the State and the trial court erred by applying the multiple offender law currently in effect rather than the multiple offender law in effect *at the time of Smith's offenses in 2017*. As noted by the Supreme Court in *State v. Parker*, *supra*, this was erroneous. However, notwithstanding the trial court's error in relying on the wrong version of La. R.S. 15:529.1, the consecutive 75-year sentences imposed were nonetheless in the proper range.

In 2017, La. R.S. 15:529.1(A)(1) provided for imprisonment "for a determinate term no less than one-half the longest term and not more than twice the longest term prescribed for the first offense" where the second felony is one that would, as a first offense, be punishable by imprisonment for a term less than his natural life. Thus, the applicable sentencing range in 2017 was 25 to 100 years at hard labor without benefit of probation, parole, or suspension of sentence. La. R.S. 14:27(D)(1)(a); La. R.S. 14:30.1(B); La. R.S. 15:529.1(A)(1).

As noted above, the trial court sentenced Smith to consecutive 75-year terms at hard labor without the benefit of probation, parole, or suspension of sentence. The misstatement of the sentencing range does not constitute error patent. *State v. Martin*, 52,674, p. 10 (La. App. 2 Cir. 5/22/19), 273 So. 3d 578, 584. *See also*, *State v. Evans*, 19-237, p. 17 (La. App. 5 Cir. 6/3/20), 298 So. 3d 394, 407.

---

[10] The sentence for a first offense attempted second degree murder was not less than ten nor more than 50 years at hard labor without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:27(D)(1)(a); La. R.S. 14:30.1(B).

20

At the sentencing hearing, the trial court advised Smith of his right to file for an appeal within 30 days as well as his right to apply for post-conviction relief within two years from the date that his conviction and sentence become final. On July 8, 2021, Smith filed a motion seeking reconsideration of the multiple offender adjudication and sentencing. The trial court denied the motion in a written opinion filed September 29, 2021.

We have found no errors patent. As for all pending motions, they are hereby denied. For the reasons set forth above, we affirm the convictions and sentences of the defendant, Carlos M. Smith.

## CONCLUSION

For the reasons set forth above, the convictions and sentences of the defendant, Carlos M. Smith, are affirmed.

**AFFIRMED.**