WILLIAMS, J.
liThe defendant, Anthony D. Robertson, was charged by amended bill of indictment with' second degree murder, in violation of La. R.S. 14:30.1, and armed robbery using a firearm, in violation of La. R.S. 14:64 and 14:64.3(A). Following a jury trial, the defendant was found guilty as charged. He was sentenced to serve life in prison, at hard labor, without the benefit of parole, probation or suspension of sentence for the murder conviction; 50 years in prison, at hard labor, without the benefit of parole, probation or suspension of sentence for the armed robbery conviction; and five years in prison, at hard labor, without the benefit of parole, probation or suspension of sentence for the firearm enhancement. All sentences were ordered to be served consecutively. The defendant now appeals.
The defendant’s appellate counsel has filed a motion to withdraw, together with a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), alleging that there are no nonfrivo-lous issues upon which to base an appeal. For the following reasons, we affirm the defendant’s convictions and sentences, and grant defense counsel’s motion to withdraw. However, we remand this matter to the trial court for the sole purpose of correcting the Uniform Order of Commitment to reflect that the sentences were ordered to be served consecutively,, rather than concurrently.
*1138 PACTS
On June 18, 2013, at approximately 9:00 p.m., officers from the Madison Parish Sheriffs Office were dispatched to the residence of Gregory Smith, Jr. in reference to a shooting. Upon their arrival, the officers discovered that Smith had been shot multiple times; Smith was pronounced dead at the scene. The police investigation revealed that Smith’s live-in | ¡^girlfriend, Ramona Smith, and their young children were present in the home at the time of the shooting.[1]
When questioned by the police officers, Ramona made the following statements: she and Smith were watching a basketball game with their children when someone knocked on their front door; Smith told the person to go to the side door because the front door was difficult to open; when the person or persons entered the home, one of the young children saw a gun; she gathered the children in the living room of the home, instructed them to “be quiet” and called 9-1-1;[2] she attempted to whisper to the 9-1-1 operator; the operator was unable to understand her; she sent text messages to her father and her brother, asking them to come to her residence and help her; she heard three gunshots; she took cover and waited for help; her father arrived with another man; her father entered the house, saw Smith’s body and called 9-1-1.
The following morning the investigating officers learned that Susie Robertson (“Robertson”) suspected that her brothers, the defendant, Anthony Robertson, and Marcus Robertson (“Marcus”), had been involved in a robbery the previous night. When Robertson was questioned by the police officers, she stated that she overheard the defendant’s cellphone conversation, during which he stated that he was going to make a “hit.”[3] She also stated that the defendant and Marcus left her residence with their cousin, Fredrick Rone; and approximately one hour after they left, she heard that a murder had been committed.
IsFurther investigation led the police officers to suspect that the defendant, Marcus, Fredrick Rone, Wilson Bryant and Precious Johnson were involved in the robbery and murder of Smith. They were apprehended and transported to the police department for questioning. Marcus, Rone and Johnson confessed to their involvement in the robbery, but denied committing the murder.
Marcus made the following statements: Rone, Bryant and Johnson picked him and the defendant up at approximately 8:00 p.m.; Bryant was driving the vehicle; Johnson owned the vehicle; when he and the defendant got into the car, they discussed robbing Smith; they planned to take Smith’s money and drugs and leave the residence; he, the defendant and Bryant armed themselves with handguns and got out of the vehicle; he stayed outside of Smith’s residence, near the side entrance, while the defendant and Bryant went inside; Rone and Johnson remained in the car; he heard three gunshots from inside the residence; he, the defendant and Bryant ran back to the car; and they drove to a residence in Vicksburg, Mississippi, where they divided the money and drugs that had been taken from Smith during the robbery.
*1139 Rone made the following statements: the defendant called him and told him that he wanted to “set up a lick” on Smith; Bryant called Smith to arrange a drug transaction; Johnson (Bryant’s niece) drove him and Bryant from Vicksburg to Tallulah; when they arrived in Tallulah, they picked up the defendant and Marcus; the defendant, Bryant and Marcus were armed with handguns; he and Johnson dropped Marcus and Bryant off on a street near Smith’s residence; they dropped the defendant off in front of Smith’s residence; all three men were dressed in black; the defendant and Marcus Rwere wearing ski masks; a short time later, the three men ran back to the car and stated, “He’s done for”; they all took a portion of the money taken during the robbery; the drugs were divided between the defendant, Marcus and Bryant; and the defendant told him that he shot and killed Smith because Smith saw the defendant’s face.
Johnson made the following statements: she traveled from Vicksburg to Tallulah with Bryant and Rone; when they arrived in Tallulah, they picked up the defendant and Marcus; Bryant told the others of the plan to “put a gun to Smith’s head” and force him to show them the location of the money and drugs; Bryant instructed Rone to drive the car because he knew the area better than she did; Bryant and Marcus exited the car behind Smith’s house and the defendant was dropped off in front of the house; she and Rone drove away; a short time later, they saw the defendant, Bryant and Marcus running; the three men got back into the car and they drove to Vicksburg; they stole $700-800 dollars in cash and approximately one pound of marijuana; she was given $100 and the rest of the money was divided between the four men; and the defendant stated that he shot Smith because Smith saw his face.
The defendant and Bryant also gave statements to the police officers. However, they denied any involvement in the robbery and murder of Smith.
The defendant was charged by bill of indictment with first degree murder and armed robbery using a firearm. He pled not guilty. Subsequently, the charge of first degree murder was amended to second degree murder. Following pretrial motions and discovery, a jury trial commenced on November 16, 2015. The defendant was subsequently found guilty as charged. On January 13, 2016, the trial court sentenced the | ^defendant as follows: second degree murder—life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence; armed robbery—50 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence; and the firearm enhancement—5 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. All sentences were ordered to be served consecutively.
Subsequently, the trial court granted the defendant’s motion for appeal and appointed the Louisiana Appellate Project to represent the defendant on appeal. This appeal followed, and the defendant’s appellate counsel has filed an Anders brief and a motion to withdraw, alleging that he could find no nonfrivolous issues to raise on appeal. See Anders v. California, supra; State v. Jyles, 1996-2669 (La. 12/12/97), 704 So.2d 241; State v. Mouton, 1995-0981 (La. 4/28/95), 653 So.2d 1176; State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir. 1990). The brief outlines the procedural history of the case and the relevant facts related to the offense. The brief also contains a “detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place.” Jyles, *1140 supra Further, defense counsel verified that he mailed copies of the motion to withdraw and his brief to the defendant, in accordance with Anders, Jyles, Mouton, and Benjamin, supra
On September 13, 2016, the defendant requested to review the appellate record and leave to file a pro se brief. The record was sent to the defendant on October 7, 2016, and on that date, this Court issued an order holding the motion to withdraw in abeyance and extended the pro se briefing | (¡deadline to November 7, 2016. The defendant did not file a pro se brief in this Court.
ERRORS PATENT
In accordance with La. C.C.P. art. 920, this Court has conducted an error patent review of the appellate record. We have found one error patent in the sentencing proceedings.
The Uniform Commitment Order, signed by the trial judge, does not accurately reflect the sentence imposed. The transcript of the defendant’s sentencing hearing and the court minutes reveal that the trial court ordered that the three sentences imposed were to be served consecutively. However, the Uniform Commitment Order reflects that the defendant’s sentences are to be served concurrently. Accordingly, we hereby remand this matter to the trial court for the sole purpose of correcting the Uniform Commitment Order to reflect that the sentences imposed are to be served consecutively, in conformity with the trial court’s order. See, State v. Davis, 15-118 (La.App. 5th Cir. 6/30/15), 171 So,3d 1223; State v. Turner, 13-836 (La.App. 5th Cir. 3/26/14), 138 So.3d 740.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s convictions and sentences and grant appellate counsel’s motion to withdraw. We remand this matter to the trial court for the sole purpose of correcting the Uniform Commitment Order to reflect that the defendant’s sentences were ordered to be served consecutively.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED; APPELLATE COUNSEL’S MOTION TO WITHDRAW GRANTED;JjREMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER.

.In some parts of the record, Ramona Smith is referred to as the wife of Gregory Smith. However, they were not married. She testified that they lived together, and had children together.

. Ramona Smith’s phone records indicate that she began calling 9-1-1 at 8:46 p.m.

. "Hit a lick” is a street slang expression for committing a robbery.