Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,080-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MITCH BRATTON                               Appellant

* * * * *

Appealed from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 99,763

Honorable Jimmy C. Teat *(Ad Hoc)*, Judge

* * * * *

CAMERON MURRAY & ASSOCIATES          Counsel for Appellant
By: H. Cameron Murray
    Clint R. Hanchey
    Jane Hogan


LIZ MURRILL                          Counsel for Appellee
Attorney General


DARWIN C. MILLER
MICHELLE ANDERSON THOMPSON
IRENA ZAJICKOVA
Assistant Attorneys General

* * * * *

Before PITMAN, THOMPSON, and ELLENDER, JJ.

**THOMPSON, J.**

Following a lengthy trial, the elected chief of police for the Village of Grayson in Caldwell Parish, Louisiana, was convicted by a unanimous jury of multiple counts of malfeasance in office related to funds in and accounting for a narcotics fund, felony theft of seized cash, and possession of two controlled substances. During the investigation by Louisiana State Police detectives, the police chief claimed that he was simply chaotically disorganized and messy as the reason for the presence of drugs in his vehicle, missing cash, and the absence of recordkeeping for years of narcotic fund transactions. The jury rejected his explanation and found him guilty on all counts. He now appeals those convictions and his subsequent sentences, fines, and ordered restitution. For the reasons set forth in greater detail below, we affirm his convictions, affirm in part and vacate in part his sentences, and remand this matter with instructions.

**FACTS AND PROCEDURAL HISTORY**

On May 18, 2020, Mitch Bratton ("Bratton"), the chief of police of the Village of Grayson, called the Louisiana State Police ("LSP") about suspicions that Rosetta Mercer ("Mercer"), the town clerk, was stealing funds from the town. Detective Nicolas Blake of the LSP interviewed Mercer and obtained a court order for bank records for Grayson's narcotics account. On June 4, 2020, LSP detectives, including Det. Blake, went to Grayson to speak to Bratton and ask him to provide records related to Grayson's narcotics fund. Bratton told detectives that the documents could be somewhere in his office or elsewhere in the town hall building. Detectives were unable to locate any documents related to the narcotics fund from the

years 2016 through 2019, despite searching multiple areas of the building and many different boxes.

Bratton told detectives that he knew how to keep records and that he used the narcotics fund to perform investigations and pay informants in Grayson. Near the end of the search by the detectives, a woman named Francis Wooten ("Wooten") arrived at the town hall to speak to Bratton about a complaint. She told the detectives that Bratton had stolen $1,150 from her. Bratton told the detectives that he had arrested her husband, Jacob Canada ("Canada"), and confiscated the $1,150 cash from him during the arrest. When questioned about these funds, Bratton told the detectives that the cash was missing and may have fallen out of his police vehicle.

LSP detectives then searched Bratton's police vehicle and found a suboxone strip, several tablets and partial tablets of Xanax, and a plastic baggy in the cup holders. The suspected drugs were submitted to the crime lab for analysis. The crime lab identified the drugs as buprenorphine and flualprazolam, which is alprazolam and with a fluorine bonded to it. alprazolam is also known as Xanax.

On August 18, 2020, Bratton was charged with one count of malfeasance in office, two counts of theft, and one count of obstruction of justice, to which he pleaded not guilty. On May 13, 2022, a grand jury returned an indictment charging the defendant with malfeasance in office (counts 1-6), unauthorized use of a movable (count 7), possession of flualprazolam (count 8), and possession of buprenorphine (count 9), in violation of La. R.S. 14:134(A)(1), 14:68(A), 40:966(C)(1)(a), and 40:968(C). The State later amended count 6 to theft, a violation of La. R.S. 14:67(A)(3) and amended Count 8 to possession of alprazolam, a violation

2

of La. R.S. 40:969(C). Bratton filed a motion to quash the first two counts of malfeasance on the basis of prescription, which was denied by the trial court.

On June 26, 2023, the jury trial began. The trial lasted until July 6, 2023, with numerous witnesses for the prosecution and defense:

LSP Detective Nicolas Blake was the first witness, who testified that Bratton initially called his office to report concerns that Mercer was stealing money. He testified that Bratton had no specific allegations or evidence that Mercer was stealing money. He later met with Mercer and her attorney, and she was not arrested for any crime. Det. Blake described receiving banking records for Grayson, specifically for the narcotics account. Det. Blake described that Bratton would request money for specific narcotics investigations and the money would be transferred to him. Det. Blake discussed photographs he had taken of Bratton's office and described it as messy and chaotic. When testifying about Bratton's work area, Det. Blake identified a brown paper bag with a broken seal on it. When questioned as to what it was, he stated, "unsecure evidence." Defense counsel then moved for a mistrial pursuant to 404(B), and the motion for mistrial was denied by the trial court.

Det. Blake further testified that Bratton directed them to several different spots to search for records related to the narcotics fund, but they found no documentation related to the narcotics fund from 2016 through 2019 and Bratton could produce no such records. Det. Blake described how Wooten arrived at Bratton's office as the detectives were searching. After a conversation with her, the detectives also searched Bratton's police vehicle. The detectives discovered a Suboxone strip, partial tablets, and a baggy in

3

the cup holder of the police vehicle. The tablets found in the police unit had been seized by Bratton on May 16, 2020 and were found by detectives on June 4, 2020. The actual quantity of tablets originally seized by Bratton was never determined. The suspected drugs were sent to the crime lab for identification by the detectives with LSP as part of this investigation.

Det. Blake identified numerous checks from Citizen's Progressive Bank made out to Bratton from the narcotics account. Det. Blake clarified that the areas searched were not the sole province of Bratton, but open to the entire police department. He testified that he searched Bratton's phone and found no evidence of him working narcotics cases or speaking with informants. He stated that he did not read the entirety of the phone record but spent several hours searching using key words. Det. Blake stated that Bratton had claimed he could not find certain documents because Mercer had rearranged his office, but Mercer told Det. Blake that she had not moved any of Bratton's documents. Bratton testified that many other employees, including Mercer and her husband, the assistant chief of police, had access to the police records.

North Louisiana Crime Lab forensic chemist Leola Summerville was next to testify at trial, and the trial court certified her as an expert in the field of forensic chemistry. Regarding the drugs found in Bratton's police unit, she testified that the common name for alprazolam is Xanax. She analyzed two tablets removed from Bratton's police vehicle and the result was flualprazolam, which is a fluorinated analog of alprazolam. Alprazolam is the parent structure inside of flualprazolam, and flualprazolam cannot exist without alprazolam. The Suboxone strip she tested that was removed from Bratton's vehicle contained buprenorphine. Regarding the notion the

4

Grayson Police Department was active in arresting and prosecuting drug cases, she noted that only five cases had been submitted to the crime lab for analysis since 2016 from Grayson's police department.

Caldwell Parish Sheriff's Department patrol deputy John Stott testified that he went to assist Bratton on a call on May 16, 2020, along with another deputy, Chuck Esters. Bratton had pulled over three men, and a set of Suboxone strips was found and seized by Bratton. He testified that Bratton chose to release the three suspects, rather than to charge them for possession of the drugs found, but that Bratton retained the drugs he took from the suspects. Apparently based on something discussed with the three suspects, Bratton asked the deputies to follow him to Jacob Canada's house. Bratton made contact with Canada and patted him down. Bratton removed Canada from the deputies' sight for about 10 minutes, then returned and arrested him. Deputy Esters did another patdown of Canada and pulled cash out of Canada's pocket.

Deputy Stott further testified that after the money was counted, Bratton took the money, folded it, said "I'll take that," and put it in his pocket. Deputy Stott testified that this was abnormal behavior. In his experience, the money would be put in an evidence bag, labeled with the case number, the amount, where it came from, who it came from, and the amount of the cash. Deputy Esters transferred Canada to jail and was followed by Bratton. He testified that Bratton stated on the police radio that he would be taking the $1,150 dollars taken from Canada to log into the jail. There was no record at trial that the cash had ever been logged into the jail.

Rashay Jacob Canada, Canada's son, testified how he gave his father $450 dollars of his Covid stimulus money and how it was confiscated by the

5

police.  He testified his money has not been returned to him.  Francis Wooten, Canada's wife, testified that she gave her husband $700 of her Covid stimulus money to hold and to use to pay bills and the rent.  It was also confiscated by Bratton.  She testified that she told Bratton that the money he took from Canada was her and her son's Covid stimulus money.  She stated that the money was for the payment of rent and other bills, and because she did not have the money, she got kicked out of her home.  Wooten testified that she called Bratton every day after Canada's arrest, seeking her money, but never got a call back.  She went to the police station and encountered the LSP detectives.  She testified that the charges were eventually dismissed against her husband but that the money was never returned to her.

Caldwell Parish Sheriff's Office Chief Deputy Jack McKeithen testified that as chief deputy he acts as the custodian of records for the sheriff's office.  He testified regarding the radio transmission made by Bratton stating that he would take the $1,150 and log it into the jail.

David Ryan Vercher testified that he is a certified public accountant and was qualified by the trial court as an expert in accounting with a specialization in the arena of governmental auditing.  Vercher was the auditor of the Village of Grayson but had never specifically examined the narcotics fund.  He testified that municipalities are required to maintain records for auditing purposes.  He stated that Louisiana law requires elected public officials and department heads within a municipality, including the elected chief of police, to maintain and exercise diligence in maintaining records for a minimum of three years.  Examples of such records would be documentation related to money transactions or nonmonetary assets.

6

Vercher clarified that while the municipality had a duty to maintain records, the chief of police also had a legislative duty to maintain records.

Grayson Mayor Melissa Bratton testified that she was elected mayor of Grayson in 2019 and that Bratton is her husband's cousin. She testified that Grayson operated the narcotics fund from 2016 through 2019, but the fund was terminated in 2019 because Grayson could not afford it anymore. She stated that Bratton was the person receiving funds from the narcotics fund but that she never saw any documentation related to how the money was being spent. She testified that Bratton told her he used the money to pay informants. She admitted that she never asked for actual documentation related to the fund.

Louisiana State Police Detective Sergeant Albert Paxton testified that he aided LSP Det. Blake with the search for records in Bratton's offices. He described the various locations Bratton suggested that they may be able to find records related to the narcotics fund and testified that Bratton suggested the cash from Canada may have fallen out of his patrol vehicle. Det. Paxton felt that Bratton was not being honest or forthcoming regarding his answers to the whereabouts of the narcotics fund records. He testified that Bratton told him that "he wasn't good with records, and he half-assed his records," later stating, "I don't do a very good job."

After the State rested its case, the defense called Caldwell Parish Sheriff Clay Bennett, who testified that the Sheriff's office did not conduct narcotics investigations with Grayson police. He stated that they do have a working relationship and there may have been times that they exchanged information regarding narcotics investigations.

7

Jacob Canada testified regarding the cash confiscated by Bratton, noting that the $1,150 belonged to his wife and child, clarifying the amount taken from him by Bratton. Ron Schleuter was qualified as an expert in law enforcement and narcotics investigation by the trial court and testified that there is no requirement for officers to place seized evidence into evidence bags, as long as the officer keeps the evidence secure and can attest that it was in a secure and safe location. On cross-examination, he testified, after being shown a photograph of Bratton's police vehicle, that he would not recommend securing evidence in such a place and it would violate his department's policy. He testified that it was unacceptable for money to fall out of a police vehicle.

Chris Navarro testified that he worked as an informant for Grayson police and was paid $250 by Bratton many times to set up drug transactions. Teresa Roberts, the current town clerk, testified that Mercer's personnel records were missing and that it is her job to maintain records for Grayson. Louis Champagne was the chief public defender for Caldwell Parish and received subsidies from Grayson. He testified that while Mercer was the clerk, the payments to his office were late and that he received no payments from August of 2019 through 2020 from her. Savannah Meredith testified that she worked with Mercer and saw Mercer taking documents from Bratton's office in an effort to clean it up in 2019. Glenn Guillory testified that Mercer converted a storage room into her office and was often moving files around to various locations. Michael Head testified that he was a maintenance man for Grayson and was once instructed to take five boxes to the dumpster by Mercer, some of which were labeled as "Grayson Police Department."

On June 30, 2023, the State dismissed count 5 (malfeasance in office) and count 6 (unauthorized use of a movable). Trial proceeded on the remaining counts. On July 6, 2023, a unanimous jury found Bratton guilty on all remaining counts.

On September 21, 2023, the trial court conducted a sentencing hearing wherein Wooten gave a victim impact statement and Bratton presented several witnesses to testify as to his character. After reviewing the testimony and presentence investigation report, the trial court sentenced Bratton as follows:

1. Count 1, Malfeasance in Office: three years at hard labor and a $1,000 fine.

2. Count 2, Malfeasance in Office: three years at hard labor with a $1,000 fine.

3. Count 3, Malfeasance in Office: three years at hard labor with a $1,000 fine.

4. Count 4, Malfeasance in Office: three years at hard labor with a $1,000 fine.

5. Count 7, Felony Theft: three years at hard labor and a $1,000 fine.

6. Count 8, Possession of Alprazolam: three years at hard labor with a $1,000 fine.

7. Count 9, Possession of Buprenorphine: sentenced to three years at hard labor with a $1,000 fine.

As noted above, counts 5 and 6 were dismissed by the State during trial. The trial court ordered that the prison sentences were to run concurrently, with two years suspended. The fines were ordered to run consecutively, and credit was given for time served. Bratton was ordered to pay restitution in the amount of $1,150 to Wooten.

Bratton filed a motion to reconsider sentence, which was denied. This appeal followed.

9

## DISCUSSION

Bratton asserts five assignments of error, which will each be addressed below.

**First Assignment of Error: The evidence is legally insufficient to sustain Mitch Bratton's convictions.**

Bratton first contends that the State failed to provide sufficient evidence to convict him of all charges. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *Steines, supra.*

The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *Steines, supra*. A reviewing court affords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Copeland*, 52,742 (La. App. 2 Cir. 9/25/19), 280 So. 3d 848, *writ denied*, 19-01646 (La. 9/27/21), 324 So. 3d 89. We will address each of Bratton's convictions below.

**Malfeasance Convictions**

Bratton first contends that the State failed to provide sufficient evidence to convict him on each of the four counts of malfeasance. Malfeasance in office occurs when any public officer and public employee shall intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or intentionally perform any such duty in an unlawful manner. La. R.S. 14:134(A)(1)-(2).

Under this statute, the State must prove the existence of a law or statute imposing an affirmative duty on the defendant as a public officer and that the defendant intentionally refused or failed to perform that duty or intentionally performed that duty in an unlawful manner. *State v. Thompson*, 15-0886 (La. 9/18/17), 233 So. 3d 529. The duty must be one expressly imposed by law on the public officer because the officer is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will expose him to criminal charges. *Id.* Intent is an essential element of the offense. As a state of mind, specific intent need not be proved as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. *Id.*

At all relevant times herein, La. R.S. 44:412(A)[1] stated:

> The head of each agency of the state and its subdivisions shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency. Such program shall provide for: effective controls over the creation, maintenance, and use of records in the conduct of current business; cooperation with the division in applying standards, procedures, and techniques designed to improve the management of records, promote the maintenance and security of records deemed appropriate for preservation, and facilitate the segregation and disposal of records of temporary value; and

---

[1] La. R.S. 44:412 was repealed on July 31, 2024.

11

> compliance with the provisions of this Chapter and the rules, and regulations of the division.

In this case, the question presented is whether the evidence is such that any rational juror could reasonably infer that defendant's failure to perform his statutory duties as chief of police of the Village of Grayson was intentional. We must evaluate the evidence in the light most favorable to the prosecution and give deference to the jury's assessment of credibility and weighing of the evidence. *State v. Thomas*, *supra*.

While Bratton argues that he did not have a duty because it was the clerk's job to maintain records, La. R.S. 44:412 states that the duty to maintain an active, continuing program for the economical and efficient management of records of the agency falls on the heard of each agency of the state and its subdivision, which would include the chief of police of Grayson. The jury heard testimony that Bratton had previously kept detailed records on the use of the narcotics fund and that detectives had found records from 2012 and earlier. The jury further heard testimony and reviewed evidence that Bratton had withdrawn thousands of dollars from the narcotics fund from 2016 through 2019 but that he was unable to produce records evidencing the names of the informants he alleged to have paid with the funds or the results of those investigations. While Bratton presented evidence that Mercer had removed records from his office, the jury clearly rejected this argument. The jury heard testimony that Bratton was evasive and inconsistent while detectives were searching for the records, which were never located. In sum, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of malfeasance were proven beyond a reasonable doubt.

**Illegal Possession Convictions**

Bratton next argues that there was insufficient evidence to convict him of possession of buprenorphine and alprazolam pursuant to La. R.S. 40:968 and La. R.S. 40:969.

To support a conviction for possession of a controlled dangerous substance ("CDS"), the prosecution must prove that the defendant knowingly possessed an illegal drug. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. The identity of the drug is an essential element of the charged offense. *Id.* Possession of a CDS may be established by showing that the defendant exercised either actual or constructive possession of the substance. "Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *Id*. The State need not prove the defendant actually possessed the drugs, and constructive possession is sufficient. *State v. Simon*, 51,778 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1149, *writ denied*, 18-0283 (La. 11/5/18), 255 So. 3d 1052. Constructive possession is established by evidence that the drugs were within the defendant's dominion and control and that the defendant had knowledge of their presence. *Id.*

At the outset, we distinguish the understandable and necessary protection afforded to law enforcement officers in the lawful and appropriate performance of their duties while confiscating, storing, and destroying controlled dangerous substances from the facts in this matter. The record makes clear this is not a situation where Bratton was interrupted in the process of confiscating, logging, and securing seized drugs. Any reasonable explanation for possession by any law enforcement officer of drugs seized

13

that are not logged into evidence evaporates with each passing day from the date of seizure until properly logged and secured in evidence. There was no detailed inventory made by Bratton of the quantity of drugs seized that could be compared to the drugs found weeks later in his vehicle. Without any record of what was seized to compare to what was found, there can be no rational explanation that Bratton was in the course of performing his duties. Another unanswered question which is of concern is why drugs were seized but suspects were not arrested, and why those drugs were not properly secured and then appropriately and lawfully destroyed if they were not to be evidence at a trial.

As to his conviction for possession of alprazolam, Bratton argues that the State only submitted evidence that he possessed flualprazolam. Alprazolam is a Schedule IV CDS pursuant to La. R.S. 40:969. The jury heard evidence and testimony from Summerville that she tested the two white tablets through the GC-MS chromatograph and the tablets were confirmed to be flualprazolam. She testified that flualprazolam contains alprazolam with fluorine bonded to it. She testified that alprazolam is the parent drug of flualprazolam and that flualrpazolam cannot exist without alprazolam. When viewed in the light most favorable to the prosecution, a rational juror could have found that Bratton was guilty of possession of alprazolam

Bratton further argued that there was insufficient evidence that he illegally possessed either alprazolam or buprenorphine because he seized them as evidence of crime and kept them secured in his police unit. The jury heard testimony that the drugs were found by detectives loose in Bratton's cupholder, weeks after the seizure of the drugs on May 16, 2020. Several

14

witnesses testified that keeping loose pills that were seized from suspects of a crime is not the proper way of handling drug evidence. The jury, confronted with the facts in this matter, clearly overcame any rational predisposition that Bratton should be considered appropriately to have had possession of controlled dangerous substances in the process of seizing, storing, using as evidence at a trial, and then properly destroying them. When viewed in the light most favorable to the prosecution, we find there was sufficient evidence that a rational juror could have found Bratton illegally possessed alprazolam and buprenorphine.

**Theft Conviction**

Bratton argues that his conviction for theft should also be vacated because the State's circumstantial evidence failed to exclude every reasonable hypothesis of innocence. He contends that the State did not prove he intended to permanently deprive Wooten of the money he confiscated from Canada.

La. R.S. 14:67(A) defines theft as:

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

The jury heard evidence that Bratton seized the $1,150 from Canada, watched as a deputy counted the money out, and then took the money, folded it, said "I'll take that," and placed it in his own pocket. Dep. Stott testified to the jury that he found this to be abnormal behavior for a law enforcement officer. The jury heard testimony from Wooten and Rashay

Canada, Jr. that the money seized from Canada was their government stimulus money.

Wooten testified that she attempted to contact Bratton about returning her money for several weeks before she came to the police department to speak with him and ended up speaking to LSP detectives. Bratton suggested to detectives that the money had simply fallen out of his police unit due to his disorganization. There was evidence presented to the jury that Bratton said on the radio that he was going to take the cash to the jail to be logged into evidence but that there was no indication he ever attempted to log the cash as evidence. Sadly, this explanation by Bratton is akin to a schoolchild asserting "the dog ate my homework" in an attempt to avoid responsibility. The above evidence forms a sufficient basis for a rational juror to conclude that Bratton intended to permanently deprive Wooten and Rashay Canada, Jr. of the cash.

For the foregoing reasons, this assignment of error is without merit.

**Second Assignment of Error: The trial court erroneously denied Mitch Bratton's motion to quash.**

Bratton argues that the trial court erred in denying his motion to quash the first two counts of malfeasance against him. The motion to quash is essentially a mechanism by which to raise pretrial pleas of defense, *i.e.*, matters which do not go to the merits of the charge. La. C. Cr. P. arts. 531-534; *State v. Armstard*, 43,333 (La. App. 2 Cir. 8/13/08), 991 So. 2d 116, *writ denied*, 08-2440 (La. 1/16/09), 998 So. 2d 89, *cert. denied*, 557 U.S. 905, 129 S. Ct. 2799, 174 L. Ed. 2d 292 (2009). In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars and determine as a matter of law

16

and from the face of the pleadings whether a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. *Id.* In cases in which the State cannot establish an essential element of the offense under any set of facts conceivably provable at trial, the motion to quash is the proper procedural vehicle. *Id.*

An appellate court may reverse a trial court's judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. *State v. Love*, 00-3347 (La. 5/23/03), 847 So. 2d 1198; *State v. Armstard*, *supra*. La. C. Cr. P. art. 532 states that a motion to quash may be based on prescription. When a defendant has brought a motion to quash based on prescription, the State bears a heavy burden to demonstrate either an interruption or a suspension of the time limit has occurred. *State v. Rome*, 93-1221 (La. 1/14/94), 630 So. 2d 1284.

In the present case, Bratton argues that the first two counts of malfeasance in the indictment are prescribed because they cover the failure to maintain public records for 2016 and 2017. The indictment was issued in 2022, and Bratton argues that the first two counts prescribed four years after the offenses were alleged to occur, pursuant to La. C. Cr. P. art. 572. The trial court denied the motion to quash, finding that the exception set forth in La. C. Cr. P. art 573(1) applied. Article 573(1) states:

> The time limitations established by Article 572 shall not commence to run as to the following offenses until the relationship or status involved has ceased to exist when:
>
> > (1)The offense charged is based on the misappropriation of any money or thing of value by one who, by virtue of

17

> his office, employment, or fiduciary relationship, has
> been entrusted therewith or has control thereof.

The trial court found that the time limitations established by Article 572 had not commenced because at the time of indictment, Bratton was still serving as the chief of police.  We find no abuse of discretion in the trial court's ruling.  Accepting as true the facts contained in the bill of information and in the bills of particulars, from the face of the pleadings, the State successfully charged Bratton with the crime of malfeasance.  Because Bratton still held his position as the chief of police, the time limitations set forth in Article 572 had not yet commenced.  This assignment of error is without merit.

**Third Assignment of Error: The trial court erroneously denied Mitch Bratton's motion for a mistrial.**

Bratton argues that the trial court erred in denying his motion for mistrial.  Mistrial is a drastic remedy which is authorized only where substantial prejudice will otherwise result to the accused.  *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79.  The determination of whether actual prejudice has occurred lies with the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.  *Id.*; *State v. Wilson*, 50,589 (La. App. 2 Cir. 5/18/16), 196 So. 3d 614.  Likewise, the determination of whether an admonition will adequately cure any prejudice and assure a fair trial lies within the trial court's discretion.  *Id.*

The law regarding mistrials on the grounds of improper references to other crimes is well settled.  La. C.E. art. 404(B) provides that evidence of other crimes, acts, or wrongs is generally not admissible.  La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the

18

judge, district attorney, or a court official during a trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. *State v. Roberson*, 46,697 (La. App. 2 Cir. 12/14/11), 81 So. 3d 911, *writ denied*, 12-0086 (La. 4/20/12), 85 So. 3d 1270. For the purposes of Article 770, a law enforcement officer is not considered a "court official," and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770. *Id.*

La. C. Cr. P. art. 771 sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require an automatic mistrial. Mistrial is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. *State v. Roberson*, *supra*. Mistrial is a drastic remedy which is authorized only where substantial prejudice will result to the accused. *Id.* A comment must not "arguably" point to a prior crime; to trigger a mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. *Id.*

Bratton argues that the trial court should have granted a mistrial after Det. Blake testified that Bratton had a bag of unsecured evidence under his desk. Det. Blake's remark was made during an examination of the photographs showing Bratton's office and places that the LSP officers searched for records. We do not find that this reference by Det. Blake was so prejudicial as to make it impossible for Bratton to receive a fair trial. The State established through further testimony that Bratton's office was

available to many people who worked in town hall, indicating that any number of people could have left the bag of evidence under the desk. One remark by a law enforcement officer that a bag contained unsecured evidence, in an office that was chaotically messy, did not cause substantial prejudice to the defendant. We do not find it was an abuse of discretion for the trial court to deny the motion for a mistrial, and this assignment of error is without merit.

**<u>Fourth Assignment of Error:</u> The trial court erroneously granted three State cause challenges.**

In his fourth assignment of error, Bratton argues that the trial court erred in granting three for cause challenges made by the State during jury selection. He contends that Caldwell Parish has only 10,000 residents and that it was normal and reasonable for many of the potential jurors to know him. La. C. Cr. P. art. 797 provides the five grounds a defendant may use to challenge a juror for cause:

> (1) The juror lacks a qualification required by law;
>
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
>
> (4) The juror will not accept the law as given to him by the court; or
>
> (5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

20

A district court is vested with broad discretion in ruling on challenges for cause, and such a ruling is subject to reversal only when a review of the entire *voir dire* reveals the court abused its discretion. *State v. Dotson*, 16-0473 (La. 10/18/17), 234 So. 3d 34. This standard of review is utilized "because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questions by the parties' attorneys." *Id.* "Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record." *Id.*

Bratton specifically objects to the dismissal of the following three jurors for cause.

Gilbert Smith

Gilbert Smith testified that he did not know Bratton and did not raise his hand when asked if he knew Bratton by the court. The State was able to show that Smith was friends with Bratton on Facebook, although he at first claimed that they were not friends. Courts are often challenged to distinguish between actual friends and the minimal amount of effort to become a "Facebook" friend, as there is no other designation available. Smith testified that he had lived in Grayson since 2008 and actively posted about politics on Facebook. He stated that he did not know that Bratton was the chief of police of Grayson. The trial court noted that it was concerned about the fact that Smith did not initially disclose that he was Facebook friends with Bratton, noting that someone, either Smith or Bratton, had to request the friendship. Considering the limited population base and subject matter of frequent Facebook posts and comments, we do not find error in the dismissal of Gilbert Smith by the trial court.

21

<u>Arthur Nelson</u>

Arthur Nelson testified that he had two generators stolen and the sheriff's office has been unable to recover them, even though they knew where the generators are located. Nelson blamed Sheriff Bennett specifically for the loss of his generators and testified that he would be unable to believe everything the sheriff had to say if he testified. The trial court noted that although Nelson eventually stated that he would listen to what every witness had to say, his first and strongest response to the sheriff was that he would not be a believable witness and was not good at his job. We recognize that such strong sentiments toward an important witness understandably undermine the ability to conduct a fair trial and unbiased consideration of the evidence and testimony, and find no error in the dismissal of Arthur Nelson by the trial court.

<u>Tina Steele</u>

Tina Steele testified that she was friends with Bratton and his wife and saw them socially. The record reflects the following exchange between the State and Steele:

> Q: Are you going to hold me to a higher burden because of your relationship with the defendant and his wife? Meaning, I've got to prove it 100%; not just beyond a reasonable doubt?
>
> A: Not sure.
>
> Q: And that's a great question. You're not sure. Do you feel that maybe you would make us prove it 100%, beyond what's required because you know him?
>
> A: Maybe.
>
> Q: Okay. Even if the law says beyond a reasonable doubt, you might make us prove it stronger because of your relationship with the defendant and his wife?
>
> A: Yes.

22

The trial court granted the challenge for cause based on her above testimony that she required more than reasonable doubt to convict.

Considering the record of the entire *voir dire*, including each potential juror's answers, we find the trial court did not abuse its discretion in granting the State's challenges for cause. The trial court, in making its rulings, was able to view each juror's tone and demeanor while delivering their responses. Thus, it was in the best position to determine if each potential juror had been properly rehabilitated. We find nothing in the record to suggest an abuse of this discretion. Accordingly, this assignment of error is without merit.

**Fifth Assignment of Error: The trial court abused its discretion when it imposed an excessive sentence.**

Finally, Bratton contends that his sentence of three years' imprisonment with two years suspended is excessive. He argues that his alleged malfeasance did not cause direct or indirect harm to any other individual. He asserts that he is a first-time offender and the trial court did not take due consideration of the mitigating factors presented during the sentencing hearing.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749; *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art.

894.1, not rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance, so long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Croskey*, 53,505 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1151. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, and employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *Dowles*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *Dowles*, *supra*.

On review, we find the trial court was in compliance with Article 894.1. The trial court heard testimony regarding Bratton's mitigating circumstances and reviewed the aggravating circumstances, including the oath of office taken by Bratton as the Village of Grayson's chief of police, the economic injury done to the victims, and the use of his position of power to facilitate the commission of the crimes. The trial court reviewed the facts of the case and the victim impact statement. The court noted that a lesser sentence would deprecate the seriousness of the defendant's crimes. We find that the trial court adequately complied with La. C.Cr.P. art. 894.1.

Second, the court must determine whether the sentence is constitutionally excessive. *Dowles*, *supra*. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. A

24

sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. *State v. Baker*, 51,933 (La. App. 2 Cir. 4/11/18), 247 So. 3d 990, *writ denied*, 18-0858 (La. 12/3/18), 257 So. 3d 195, and *writ denied*, 18-0833 (La. 12/3/18), 257 So. 3d 196.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and sentences should not be set aside as excessive in the absence of manifest abuse of discretion. *Dowles*, *supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *Id.* Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Id.*

The offense of malfeasance is punishable by imprisonment for not more than ten years, with or without hard labor, or a fine of not more than five thousand dollars, or both. La. R.S. 14:134(C)(1). Conviction of possession of buprenorphine, a Schedule III CDS, is punishable by imprisonment, with or without hard labor, for not less than one year nor more than five years and, in addition, defendant may be required to pay a fine of not more than five thousand dollars. La. R.S. 40:968(C). Conviction of possession of alprazolam, a Schedule IV CDS, is punishable by imprisonment, with or without hard labor, for not less than one year nor more than five years and, in addition, defendant may be required to pay a fine of not more than five thousand dollars. La. R.S. 40:969(C).

The trial court sentenced Bratton as follows:

1. Count 1, Malfeasance in Office: three years at hard labor and a $1,000 fine.

2. Count 2, Malfeasance in Office: three years at hard labor with a $1,000 fine.

3. Count 3, Malfeasance in Office: three years at hard labor with a $1,000 fine.

4. Count 4, Malfeasance in Office, three years at hard labor with a $1,000 fine.

5. Count 7, three years at hard labor and a $1,000 fine.

6. Count 8, Possession of Alprazolam, three years at hard labor with a $1,000 fine.

7. Count 9, Possession of Buprenorphine, sentenced to three years at hard labor with a $1,000 fine.

The trial court suspended two years of his prison sentences, and Bratton was ordered to serve one year at hard labor. All sentences were to run concurrently to one another. Bratton was ordered to pay all costs of the proceeds and the fines as a condition of his parole and probation. Additionally, he was ordered to pay restitution to Wooten in the amount of $1,150.

We are mindful in reviewing the sentences imposed on public officials for malfeasance in office of the delicate balance between having a chilling effect on people being willing to seek public office and to serve, with the requirement to hold elected officials to the highest standards when their conduct varies, as it did here, from what is expected and required. Unfortunately for Bratton, there is no documentation or record keeping which could explain to the jury the actions he undertook with the authority conferred on him. As a result, we cannot say there was error on the part of the jury in its verdict or the court below in fashioning the sentences imposed.

26

On review, we do not find that Bratton's sentences are constitutionally excessive. The sentences imposed are in the middle of the range for all of the offenses and have all been partially suspended. The sentences do not shock the sense of justice, nor are they a needless infliction of pain and suffering. While we may have fashioned a different sentence under these facts and circumstances, the record before us supports the sentences and fines, and there is no indication that they are excessive. This assignment of error is without merit.

## ERRORS PATENT

A review of the record indicates that there is an error patent in the current proceedings regarding the trial court's imposition of the seven fines of $1,000 each. As noted above, each of the above counts authorized the imposition of a fine of not more than $5,000. The trial court in the present matter imposed a $1,000 fine on Bratton for each count. However, La. C. Cr. P. art. 875.1 states, in pertinent part:

> A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven. Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.
>
> B. For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary

27

obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C. (1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

(2) The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.

D. (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:
(a) Waive all or any portion of the financial obligations, except as provided in Paragraph E of this Article.
(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subsubparagraph (1)(b) of this Paragraph shall be determined by the court after considering all relevant factors, including but not limited to the defendant's average gross daily income for an eight-hour work day.
(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.
(c) Except as provided in Paragraph E of this Article, during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not

limited to substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the state, the defendant, or the defendant's attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether a modification of the monthly financial obligation imposed pursuant to this Article is appropriate under the circumstances.

We find that Bratton was entitled to a hearing pursuant to La. C. Cr. P. art. 875.1 prior to the imposition of the fines and the order of restitution to Wooten. There is no evidence in the record that he or the trial court waived the determination of financial hardship. Because a hearing was not held, we vacate the $1,000 fine assessed for each count and the order of restitution and remand the matter to the trial court for the required hearing. We do not find Bratton's prison sentences should be vacated, as they are not excessive, as noted above.

During sentencing, the trial court advised Bratton that he had "a period of two years from the date this Judgment becomes final to file" for postconviction relief. La. C. Cr. P. art. 930.8 provides that a defendant has two years from the date his "judgment of conviction and sentence has become final" in which to seek post-conviction relief. Bratton is hereby advised that no application for postconviction relief shall be considered if filed more than two years after the judgment of conviction and sentence has become final. *State v. Nelson*, 46,915 (La. App. 2 Cir. 2/29/12), 86 So. 3d 747.

Finally, the Uniform Commitment Order, signed by the trial judge, does not accurately reflect the sentences imposed. The transcript of Bratton's sentencing hearing and the court minutes reveal that the trial court

ordered that Bratton was sentenced to three years hard labor, with two years suspended, and to pay a fine of $1,000 plus fees for each charge. The prison time was to run concurrently, and the fines were to run consecutively. Credit was given for time served. Restitution was ordered in the amount of $1,150 to Wooten. However, the Uniform Commitment Order reflects that Bratton must serve three years of supervised probation upon release. Accordingly, we hereby remand this matter for the purpose of correcting the Uniform Commitment Order to reflect that the sentences imposed are in conformity with the trial court's order. *State v. Robertson*, 51,225 (La. App. 2 Cir. 4/12/17), 216 So. 3d 1137, *writ denied*, 17-0937 (La. 4/6/18), 240 So. 3d 185.

### CONCLUSION

Bratton's convictions are affirmed. Bratton's sentences are affirmed, in part, as to his sentences of three years at hard labor, two years suspended, on each count, to run concurrently, and vacated, in part, as to the $1,000 fine imposed on each count without a hearing. We remand this case for a hearing pursuant to La. C. Cr. P. art. 875.1 to determine Bratton's ability to pay any assessed fine or restitution and to correct the Uniform Commitment Order to reflect that the sentences imposed are in conformity with the trial court's order.

**CONVICTIONS AFFIRMED, SENTENCES AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.**

30